# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

MARK S. SCHROEDER,

        Plaintiff,

-vs-

CITY OF WAUKESHA, OFFICER RYAN         Case No.   13-cv-696
LaFAVOR, OFFICER AMANDA BAUER,
LIEUTENANT KEVIN KOBER, CAPTAIN DENNIS ANGLE,
SERGEANT TOM WAGNER, and other unidentified members
of the CITY OF WAUKESHA POLICE DEPT.,
each in his/her Individual capacity, COMMUNITY
INSURANCE CORPORATION and/or
ABC INSURANCE CORPORATION

        Defendants.

---

## AMENDED COMPLAINT

---

### INTRODUCTORY STATEMENT

      This is a civil action brought on behalf of the plaintiff, Mark S. Schroeder, for violations of his Constitutional rights guaranteed to him under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable searches and seizures of his person and property, to be free from prosecution without due process of law, and violations of 42 U.S.C. Section 1983.  The plaintiff seeks compensation for his serious injuries resulting from an incident involving the excessive use of force by the defendants in executing an unlawful arrest as well as the subsequent intentional withholding of exculpatory evidence from both the plaintiff and the prosecuting authorities before and during his criminal prosecution in clear violation of the plaintiff's due process rights.

1

## PARTIES

1.    The plaintiff, Mark S. Schroeder ("Schroeder"), is an adult resident of Wisconsin, currently residing at 2463 N. 73rd Street, Wauwatosa, Wisconsin 53213.

2.    The defendant, Officer Ryan LaFavor ("LaFavor"), is an adult resident of Wisconsin, whose last known business address is the City of Waukesha Police Department, 1901 Delafield Street, Waukesha, Wisconsin 53188. LaFavor is being sued in his individual capacity, as well as his official capacity as an Officer for the City of Waukesha Police Department.  At all times relevant to this complaint, LaFavor was acting under color of state law within the meaning of 42 U.S.C. § 1983, and was acting within the scope of his employment within the meaning of § 895.46 Wis. Stats.

3.    The defendant, Officer Amanda Bauer ("Bauer"), is an adult resident of Wisconsin, whose last known business address is the City of Waukesha Police Department, 1901 Delafield Street, Waukesha, Wisconsin 53188. Bauer is being sued in her individual capacity, as well as her official capacity as an Officer for the City of Waukesha Police Department.  At all times relevant to this complaint, Bauer was acting under color of state law within the meaning of 42 U.S.C. § 1983, and was acting within the scope of her employment within the meaning of § 895.46 Wis. Stats.

4.    The defendant, Patrol Division Lieutenant Kevin Kober ("Kober"), is an adult resident of Wisconsin whose last known business address is the City of Waukesha Police Department, 1901 Delafield Street, Waukesha, Wisconsin 53188. Kober is being sued in his individual capacity, as well as his official capacity as a Captain for the City of Waukesha Police Department.  At all times relevant to this complaint, Kober was acting under color of state law within the meaning of 42 U.S.C. § 1983, acting as a municipal

agent with final policy making authority, and was acting within the scope of his employment within the meaning of § 895.46 Wis. Stats.

5.      The defendant, Criminal Investigative Unit Division Sergeant Tom Wagner ("Wagner"), is an adult resident of Wisconsin whose last known business address is the Waukesha City Police Department, 1901 Delafield Street, Waukesha, Wisconsin 53188. Wagner is being sued in his individual capacity, as well as his official capacity as a Sergeant for the Waukesha City Police Department.  At all times relevant to this complaint, Wagner was acting under color of state law within the meaning of 42 U.S.C. § 1983, acting as a municipal agent with final policy making authority, and was acting within the scope of his employment within the meaning of § 895.46 Wis. Stats.

6.      The defendant, Captain Dennis Angle ("Angle"), is an adult resident of Wisconsin whose last known business address is the Waukesha City Police Department, 1901 Delafield Street, Waukesha, Wisconsin 53188. Angle is being sued in his individual capacity, as well as his official capacity as a Captain for the Waukesha City Police Department.  At all times relevant to this complaint, Angle was acting under color of state law within the meaning of 42 U.S.C. § 1983, acting as a municipal agent with final policy making authority, and was acting within the scope of his employment within the meaning of § 895.46 Wis. Stats.

7.      The defendants, officers and representatives of the City of Waukesha or Waukesha County that are unidentified at this time, and who took part in the June 19, 2010 arrest and subsequent investigation of that incident, are adult citizens of the State of Wisconsin, who at all times material hereto were employed by the City of Waukesha, or Waukesha County, in the State of Wisconsin, and were acting under color of law within

the meaning of 42 U.S.C. § 1983, and were acting within the scope of their employment within the meaning of § 895.46 Wis. Stats.

8.  The defendant, City of Waukesha ("Waukesha"), is a political subdivision of the State of Wisconsin, a Wisconsin municipal corporation, and, at all times relevant hereto, employed defendants LaFavor, Bauer, Kober, Wagner, Angle and others, in the City of Waukesha Police Department.

9.  The defendant, Community Insurance Corporation and/or ABC Insurance Company, is an insurance company authorized to do business in Wisconsin, with a local agent for service of process as indicated on the Summons. Upon information and belief, Community Insurance Corporation issued a liability or other policy of insurance that provides coverage to defendants LaFavor, Bauer, Kober, Wagner, Angle and/or the City of Waukesha for the liability alleged herein. As such, Community Insurance Corporation is a proper party defendant. It has a direct interest in this litigation, it is a necessary and proper party because it is obligated to indemnify LaFavor, Bauer, Kober, Wagner, Angle and/or the City of Waukesha (and to pay to plaintiff) any judgment rendered against said defendants.

## JURISDICTION AND VENUE

10.  This action is brought pursuant to 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution, and the laws of the State of Wisconsin.

11.  The jurisdiction of this Court is predicated on 28 U.S.C. § 1331 and the supplemental jurisdiction of this Court under 28 U.S.C. § 1367(a).

4

12.    Venue is proper under 28 U.S.C. § 1391 (b) (2), which provides that actions may be brought in the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred and the conduct detailed in this complaint is alleged to have occurred in the City and County of Waukesha, Wisconsin.

13.    All conditions precedent to the maintenance of this action have been performed or have occurred prior to its institution, including those set forth in § 893.80 Wis. Stats. A copy of the documents demonstrating compliance with all conditions precedent are incorporated and attached hereto as Exhibit 1.

## FACTUAL ALLEGATIONS

### June 19, 2010 Excessive Force Incident

14.    On the evening of June 19, 2010, a traffic accident occurred that involved two vehicles, near the intersection of East Sunset Drive and State Highway 164, in the City of Waukesha, Wisconsin. The vehicles involved in that accident were driven by Christine McLaughlin and Jeanne Schroeder, the latter being the daughter of the plaintiff. Also present in Jeanne Schroeder's vehicle was passenger Elliott T. Sawicki. Within minutes, a third vehicle containing friends and/or relatives of Jeanne Schroeder, driven by Jennifer Schroeder, also arrived at the scene.

15.    Approximately five minutes after the accident occurred, Officer Ryan LaFavor of the Waukesha City Police Department arrived at the scene, where the two vehicles involved in the accident were parked on the east side of Highway 164.

16.    After learning that the third vehicle, driven by Jennifer Schroeder and containing the friends/ relatives of Jeanne Schroeder, was not involved in the underlying accident, LaFavor instructed the occupant(s) of that vehicle to leave the scene.

5

17.    The occupant(s) of that third vehicle expressed reluctance to leave based on their concern for Jeanne Schroeder's safety and well-being. In response, LaFavor ordered the occupants to leave the scene and instructed them that they would be arrested if they failed to do so immediately. At that point, the occupants of the third vehicle removed themselves from the immediate vicinity of the accident, but remained approximately 50 yards away from that location on the roadside.

18.    At some point thereafter, Officer Amanda Bauer arrived on the scene and began to block off the westbound traffic on East Sunset Drive from the east side of the intersection.

19.    Within an additional several minutes of the above-described initial interaction with LaFavor, Mark Schroeder (hereinafter "Schroeder"), arrived at the scene in a fourth vehicle which was driven by his wife, Lori Schroeder. Mark and Lori Schroeder parked their vehicle on the opposite side of State Highway 164, at a gas station located at that intersection. At that time, the two vehicles involved in the accident, as well as LaFavor, were located across the street from the Schroeder's vehicle. LaFavor was speaking with the drivers of the two vehicles involved in the accident.

20.    Concerned for his daughter's safety and well-being, Schroeder exited his vehicle on foot and began to cross State Highway 164 in the direction of his daughter. When Schroeder reached a median in the roadway, approximately 25 to 30 yards from his daughter's vehicle, LaFavor spotted Schroeder and shouted at Schroeder not to come any closer to the accident vehicles.

21.    Schroeder took approximately two steps further, while informing LaFavor that the driver involved in the accident, Jeanne Schroeder, was his daughter.  LaFavor

responded by shouting to Schroeder that if Schroeder continued walking towards his daughter, he would be arrested.

22. Schroeder immediately walked away from the scene back towards the above-mentioned median, until he was physically located completely on the median. When he reached the median, he turned his body back towards the location of his daughter.

23. At this time, LaFavor ran towards Schroeder and immediately used serious physical force to bring Schroeder to the ground on the median. Despite the fact that Schroeder had been quickly subdued and placed in a prone position, LaFavor continued to use blunt force by striking Schroeder repeatedly with his closed fists, applying "knee strikes" to Schroeder's midsection, and kicking Schroeder's upper and lower body with his feet while Schroeder was on the ground.

24. While LaFavor was applying blunt force to Schroeder's person, the second officer to arrive upon the accident site, Officer Amanda Bauer, immediately ran to the median where the physical assault was occurring.

25. While on the ground, Schroeder informed the officers that he had recently undergone back surgery. Schroeder pleaded with LaFavor and Bauer to "please stop" and attempted to remain completely still.

26. Upon information and belief, Bauer also applied blunt force to Schroeder's person by striking him repeatedly with closed fists, also applying "knee strikes", and by kicking Schroeder's upper and lower body with her feet. While Schroeder was lying face down on the ground and remaining still, Bauer repeatedly instructed Schroeder to "shut the fuck up."

7

27.    At or about the same time, several other unnamed City of Waukesha Police Department officers arrived at the median to assist LaFavor in continuing to forcibly detain, handcuff, and formally arrest Schroeder. Upon information and belief, those unnamed officers may have at the same time attempted to stop LaFavor from continuing to use excessive force against Schroeder.

28.    Because Schroeder complained of pain at the scene, he was then immediately transported to Waukesha Memorial Hospital under the supervision of a member of the City of Waukesha Police Department.

29.    As a direct result of the above-described blunt force applied to Schroeder's body, Schroeder was diagnosed with a fractured rib and multiple abrasions to his shoulders, wrists, knees and face at Waukesha Memorial Hospital. He also suffered permanent injuries to his hands.

30.    Immediately after receiving medical attention for his injuries at Waukesha Memorial Hospital, Schroeder was then transported under the supervision of a member of the City of Waukesha Police Department back to the Bureau of Identification and subsequently released per the authority of a Sergeant in the City of Waukesha Police Department.

31.    The City of Waukesha Police Department's Mobile Audio Video Recording System ("MAVRS") was activated on Officer Bauer's police squad car as she arrived on scene with her squad lights on, and video and audio footage of the entire incident was captured by Officer Bauer's squad car camera. While Officer LaFavor's squad car was not pointed toward his interaction with Schroeder, it was activated as well, and caused

audio recording of the incident to be captured on Officer LaFavor's squad car MAVRS microphone on his person.

32.   Both Officer LaFavor and Officer Bauer were aware that video and audio footage had captured the incident. Both Officers LaFavor and Bauer viewed Officer Bauer's squad video recording of the incident multiple times during the hours and days following Schroeder's arrest, as did Kober, Wagner, and other members of the Waukesha Police Department.

33.   The fact that there was video and audio footage of the entire incident was completely omitted from both Officer LaFavor's and Officer Bauer's separate Incident Reports regarding the Schroeder arrest.

34.   There were multiple eyewitnesses to the entire incident. None of the witnesses were interviewed nor were they asked by the City of Waukesha Police Department to provide a statement.

35.   Several eyewitnesses, however, did provide statements to counsel for Schroeder which substantiated Schroeder's contention that he did not resist arrest and that unprovoked, unwarranted, and excessive force was used by Waukesha Police officials in carrying out the unlawful arrest.

36.   The fact that video and audio footage of the entire incident even existed was never revealed by any member of the Waukesha Police Department to the Waukesha County District Attorney's Office for its review of the matter for criminal charges against Mark Schroeder.

37.   None of the captured audio or video footage was ever provided to the Waukesha County District Attorney's Office for its review of the matter for criminal

charges against Mark Schroeder or at any time thereafter. The Police Department only submitted officer incident reports describing the incident for review of criminal charges.

## Investigation and Criminal Prosecution

38.   On or about August 17, 2010, Schroeder was charged with violating Wis. Stat. § 946.01 ("Resisting or Obstructing an Officer").

39.   The criminal case, 10-CM-1653, was presided over by the Honorable Kathleen B. Stilling of the Waukesha County Circuit Court.

40.   At the initial appearance on September 1, 2010, defense counsel for Schroeder filed a Discovery Demand requesting among other evidence, "any and all video/digital recordings of police interaction with" Mark Schroeder.

41.   On October 12, 2010, defense counsel for Schroeder sent an additional written request to the Waukesha County Assistant District Attorney Timothy Suha again requesting video recordings of any police interaction with Mark Schroeder.

42.   On October 14, 2010, defense counsel for Schroeder spoke with LaFavor via telephone twice. During those interactions defense counsel confirmed for the first time that squad video recordings of the incident indeed existed and again requested that the video recordings of any police interaction with Mark Schroeder be preserved as evidence. LaFavor informed defense counsel that LaFavor and Bauer had reviewed the video evidence on that day and that both the video and audio evidence would be preserved.

43.   On October 15, 2010, a Notice of Injury & Claim was served upon the City of Waukesha stating that "Officers Ryan LaFavor and Amanda Bauer used excessive force injuring Mark Schroeder and unlawfully arrested him". On October 17, 2010, that

Notice of Injury & Claim was served upon Officer Ryan LaFavor. On October 18, 2010, that Notice of Injury & Claim was served upon Officer Amanda Bauer.

44. On December 7, 2010, Assistant District Attorney Suha informed defense counsel for Schroeder that the video evidence had been destroyed.

45. On January 13, 2011, in response to learning that the video evidence had been destroyed, defense counsel for Schroeder filed a Motion to Dismiss based on the bad faith destruction of exculpatory evidence.

46. On April 13, 2011, the Court conducted a hearing on Schroeder's motion to dismiss for failure to disclose exculpatory evidence. During that hearing, Officer LaFavor and Lieutenant Kober provided sworn testimony. The Court also reviewed multiple exhibits, including the detailed viewing logs of the MAVRS audio and video footage captured of the June 19, 2010 incident, produced at the hearing by Lt. Kober and admitted as evidence. Despite Kober's testimony that the MAVRS logs were purged routinely after 120 days due to inadvertent labeling oversight, the viewing logs clearly demonstrated that the video recording evidence of the incident captured by Officer Bauer's squad was of heightened and particular significance to Officers Bauer and LaFavor, Lt. Kober, Wagner, and other Waukesha Police command staff, undermining Kober's and LaFavor's testimony that the video and audio recordings were unremarkably and unintentionally subjected to routine purge.

47. On or about June 3, 2011, a lengthy oral decision was recited by Judge Stilling, where numerous factual findings were made based upon the testimony and exhibits provided by the Waukesha Police Department during the April 13, 2011 hearing.

A transcript of that June 3, 2011 oral ruling is incorporated and attached hereto as Exhibit 2.

48. At the June 3, 2011 hearing, the Court made the following express factual findings on the record:

a. That both Officer LaFavor and Officer Bauer's squads had digital video capability. Officer Bauer's squad captured the video footage of the incident, while Officer LaFavor's squad captured audio of the incident.

b. That the State introduced, with the testimony of Lieutenant Kober two exhibits, which were audit logs relating to the two digital tapes. Those exhibits recorded "an accurate history of everyone who accessed the log", according to Lieutenant Kober's testimony.

c. That on the night of the arrest in the early morning hours Officer LaFavor and Officer Bauer watched both tapes.

d. That "Officer LaFavor testified that the tape demonstrated that Mr. Schroeder was resisting arrest."

e. That Officer LaFavor testified that he hit "hold as evidence" so that the video should not have been allowed to be deleted in the normal course of events.

f. That Lt. Kober testified that Kober is "one of only two people who has the ability to set the videos up either to be un-held for evidence or to delete the videos or to manipulate them." On July 18, 2010, Lt. Kober marked both of the videos as "no" for "hold for save." Kober testified that he did so because he believed the tape to be a routine crash investigation and, therefore, not "something that was suitable for being saved as evidence."

g.  That Officer LaFavor understood that the video had some evidentiary significance because he marked it as "hold for evidence." He also testified that there are certain types of videos that are supposed to be saved for evidence, and one of them is any incident where there is a use of force or an arrest or resisting—that departmental policy requires those videos to be held for evidence.

h.  That the video was accessed and viewed by Sergeant Greg Satula twice on June 20, 2010.  The video was accessed, downloaded, and viewed by Lieutenant Kober on June 20, 2010.  The video was accessed and viewed by Captain Dennis Angle on June 21, 2010.  There were separate viewings by three separate people on June 20, 2010, and then three more viewings on June 21, 2010. Additionally, Sergeant Tom Wagner accessed and viewed the video on June 25, 2010.

i.  That the video was viewed by Waukesha Police officials a total of 23 times in the 5 days immediately following the June 19, 2010 incident according to the logs. The footage was viewed in a "very concentrated way" and it therefore "clearly was the subject of a lot of attention at the Waukesha Police Department."  That despite all of this, the video was never forwarded on to the prosecuting district attorney to be used as evidence, which was according to the Waukesha Police Department "clearly inculpatory".

j.  That Mr. Schroeder's defense counsel requested the footage in both writing and in a telephone conversation with Officer LaFavor on October 14, 2010. As of October 14, 2010, Officer LaFavor knew that the video footage of the incident was something that was specifically demanded by the defense. That immediately after defense

counsel's October 14 request to preserve the video footage of the incident, Officer Bauer viewed the video an additional two times.

      k.  That approximately 5 days after that phone conversation, the video was destroyed and declared unrecoverable by the Waukesha Police Department.

49.    The Court ruled during the June 3, 2011 hearing that a due process violation had occurred based upon the Waukesha Police Department's bad faith failure to preserve and turn over potentially exculpatory evidence to the defense. As a result, the criminal charges against Schroeder were dismissed in their entirety.

50.    The Court held:

      a.  That there was "bad faith in this case based on the repeated viewings of this video by not only superior officers but by the police officers in this case—over 20 times between the two videos over a course of the five days immediately after this incident circumstantially suggests there was an enormous amount of interest in these videos."

      b.  That "Lieutenant Kober's testimony that this was a mere accident is not credible."

      c.  "That nobody ever notified the prosecution that this video existed and forwarded a copy to them for their use in charging even though a Captain, two Sergeants, and a Lieutenant looked at the video."

      d.  That this "really goes beyond mere negligence, and it really does look like bad faith" and that "there was an element of intent" to these actions by the Waukesha Police Department.

e.  That "the actions of the officers indicate that they were trying to hide something."

f.  That the Waukesha Police Department "destroyed a piece of evidence that I think was likely to be exculpatory based on the circumstantial evidence that was presented in this case."

51.  Furthermore, and in conjunction with the criminal prosecution of Schroeder, the Waukesha Police Department also conducted an independent internal investigation into the June 19, 2010 incident as well as the events that transpired during the criminal investigation.

52.  The result of that independent investigation was a Waukesha Police Memorandum dated May 12, 2011, written by Captain of Police Ronald J. Tischer and directed to Chief of Police Russell P. Jack, entitled "Internal Investigation of the Mark S. Schroeder Arrest." A copy of that Memorandum is incorporated and attached hereto as Exhibit 3.

53.  Captain Tischer's Memorandum stated the following:

a.  The audio and video recordings of the June 19, 2010 incident, captured by Officer Bauer and Officer LaFavor's squad vehicles were labeled as "crash investigation."

b.  "[a]fter 120 days, the recordings were purged from the system."

c.  LaFavor said he classified the MAVRS recording as a "crash investigation" and saved it as evidence.

d.  "LaFavor and Bauer both had conversations with Schroeder's attorney. Both Officers told the attorney that they watched the video of the incident. The

District Attorney's Office requested a copy of the recordings. It was at this time the recordings could not be located."

e.    "On April 12, 2011 I interviewed Lt. Kevin Kober regarding his involvement in the missing MAVRS Recording."

f.    "Lt. Kober has been involved with the MAVRS system since its inception. Lt. Kober was responsible for researching, purchasing, and implementing a video and audio recording system for the squad cars. He was also responsible for developing a Standard Operating Procedure (SOP) and General Order on the usage of the MAVRS system. Lt. Kober is currently the system administrator for the police department's squad cameras."

g.    "As LaFavor's shift commander at the time of the incident in question, Kober stated he reviewed the video and audio and felt the use of force was appropriate."

h.    "Kober also stated that the video and audio were played for roll calls to be used as a training tool."

i.    "Kober stated that he is responsible to ensure that there is enough storage space to maintain records of the videos that are evidence and may be needed for court or investigations."

j.    "Kober went through all of LaFavor's recordings that were saved. Due to the large number and hours of video saved by LaFavor, Kober could not review each and every video before unmarking it as evidence."

k.    Per the SOP, crash investigations are not normally saved as evidence.

l.      Each use of force report is reviewed by a supervisor to determine whether or not the amount of force used was appropriate and justified.

m.      Officer LaFavor's use of force report (IR 10-29896) was reviewed by Sgt. Wagner. Wagner stated the use of force in this report was congruent with the MAVRS recording of the incident and was justified and reasonable.

n.      Captain Dennis Angle was the CID Supervisor that reviewed and locked the report. Cpt. Angle said he too had the opportunity to review the incident on MAVRS.

o.      Officer Amanda Bauer was able to review the video on several occasions. Her last viewing of the video took place on October 14, 2010.

p.      The District Attorney's office made a request for a copy of the video in October. It was at this time the recording was found to be purged.

q.      When Lt. Kober was cleaning up the storage and saw this crash saved as evidence he unmarked it as evidence. Subsequently the recording was purged from the system after 120 days.

r.      The video of the incident was viewed by a significant amount of Officer's and Supervisors. In all, there are 51 people that viewed the video of this incident.

s.      Officer LaFavor was questioned as to why Schroeder was not given a Preliminary Breath Test (PBT). LaFavor stated he never followed through to make sure this happened.

t.      "Even though Sgt. Rice showed up on the scene and spoke to Schroeder's family, no written statements were ever taken. This is failure of the on scene

officer's and Sgt. Rice. It was Bauer's responsibility to make sure statements were taken from witnesses." Ultimately, Sgt. Rice should have confirmed everything that needed to be taken care of on scene was, once he showed up."

u. "The problems that were uncovered surrounding this incident could have all been prevented."

## CAUSES OF ACTION

## COUNT I

## Assault and Battery Against Defendants LaFAVOR and BAUER

54. For a cause of action against defendants LaFavor and Bauer, plaintiff alleges each of the preceding paragraphs as though set forth fully herein.

55. That the above-mentioned actions constitute the infliction of a bodily contact; that the above-mentioned defendants acted with the intent to inflict such contact and make such bodily contact in an angry, revengeful, rude, or insolent manner; which was offensive to a reasonable sense of personal dignity and which was unwarranted by the social usages prevalent at the time and place at which it was inflicted.

56. By virtue of the defendants' unlawful actions against the plaintiff, the plaintiff has sustained serious damages to his person, substantial physical, mental and emotional distress, community humiliation and loss of reputation, for all of which he seeks compensatory damages in amounts deemed just by the Court.

57. Because the actions of the defendants were carried out maliciously or with reckless disregard for the plaintiff's clearly established fundamental rights, the plaintiff seeks an award of punitive damages against the defendants in their respective individual

capacities, to deter them, and others similarly situated, from similar wrongful acts in the future.

## COUNT II

### Violation of Civil Rights While Acting Under Color of Law - 42 U.S.C. § 1983 Against Defendants LaFAVOR and BAUER

58. For a cause of action against defendants LaFavor and Bauer in their respective individual and official capacities, under 42 U.S.C. § 1983, plaintiff alleges each of the preceding paragraphs as though set forth fully herein.

59. By using excessive physical force against the plaintiff on June 19, 2010, the defendants violated plaintiff's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable and unlawful searches and seizures of his person and property.

60. In committing the above actions, the defendants acted in an objectively unreasonable manner, and in reckless disregard of the plaintiff's clearly established Constitutional rights, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

61. By virtue of the defendants' unlawful actions against the plaintiff, the plaintiff has sustained serious damages to his person, substantial physical, mental and emotional distress, community humiliation and loss of reputation, for all of which he seeks compensatory damages in amounts deemed just by the Court.

62. Because the actions of the defendants were carried out maliciously or with reckless disregard for the plaintiff's clearly established fundamental rights, the plaintiff seeks an award of punitive damages against the defendants in their respective individual

and official capacities, to deter them, and others similarly situated, from similar wrongful acts in the future.

## COUNT III

### Violation of Civil Rights While Acting Under Color of Law - 42 U.S.C. § 1983 Against Defendants LaFAVOR and BAUER

63.    For a cause of action against defendants LaFavor and Bauer in their respective individual and official capacities, under 42 U.S.C. § 1983, plaintiff alleges each of the preceding paragraphs as though set forth fully herein.

64.    By arresting the plaintiff without probable cause while acting under color of law on June 19, 2010, the defendants violated plaintiff's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable and unlawful searches and seizures of his person and property.

65.    In committing the above actions, the defendants acted in an objectively unreasonable manner, and in reckless disregard of the plaintiff's clearly established Constitutional rights, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

66.    By virtue of the defendants' unlawful arrest, the plaintiff has sustained serious damages to his person, substantial physical, mental and emotional distress, community humiliation and loss of reputation, for all of which he seeks compensatory damages in amounts deemed just by the Court.

67.    Because the actions of the defendants were carried out maliciously or with reckless disregard for the plaintiff's clearly established fundamental rights, the plaintiff seeks an award of punitive damages against the defendants in their respective individual

and official capacities, to deter them, and others similarly situated, from similar wrongful acts in the future.

## COUNT IV

### Malicious Prosecution Against Defendants LaFAVOR, BAUER, KOBER, WAGNER, ANGLE and other unidentified Waukesha City Police Department officials

68. For a cause of action against defendants LaFavor, Bauer, Kober, Wagner, Angle and/other unidentified Waukesha City Police Department officials plaintiff alleges each of the preceding paragraphs as though set forth fully herein.

69. That LaFavor, Bauer, Kober, Wagner, Angle and/or other unidentified Waukesha City Police Department officials did refer the plaintiff for criminal charges to the Waukesha County District Attorney thereby intentionally causing a criminal proceeding to be instituted against the plaintiff on the basis of false allegations, by intentionally omitting crucial and exculpatory evidence from the prosecuting entity, and did so before and after intentionally destroying exculpatory and/or impeaching evidence. That all of the above described actions were carried out in direct response to the plaintiff's assertion of innocence, to obstruct the investigation undertaken by the plaintiff's criminal defense counsel, in direct response to the plaintiff's repeated requests that the exculpatory/and or impeaching evidence be produced, and in direct response to the plaintiff's stated intention to assert his rights through the filing a civil action.

70. That LaFavor, Bauer, Kober, Wagner, Angle and/or other unidentified Waukesha City Police Department officials did intentionally cause criminal proceedings to be continued against the plaintiff on the basis of false allegations, by intentionally omitting crucial and exculpatory evidence from the prosecuting entity, and did so before

and after intentionally destroying exculpatory and/or impeaching evidence. That all of the above described actions were carried out in direct response to the plaintiff's assertion of innocence, to obstruct the investigation undertaken by the plaintiff's criminal defense counsel, in direct response to the plaintiff's repeated requests that the exculpatory/and or impeaching evidence be produced, and in direct response to the plaintiff's stated intention to assert his rights through the filing a civil action.

71.    That LaFavor, Bauer, Kober, Wagner, Angle and/or other unidentified Waukesha City Police Department did act with malice, without probable cause, in bad faith, and with full knowledge that the evidence which was ultimately withheld from both the plaintiff and the Waukesha County District Attorney was impeaching and/or exculpatory.

72.    That based on the above described actions, including the destruction of evidence which was ultimately found to be in bad faith and contrary to the plaintiff's constitutional rights, the Waukesha County Circuit Court dismissed all charges against Schroeder, thus terminating the criminal proceedings in favor of the plaintiff.

73.    That by virtue of the defendants' unlawful actions against the plaintiff, the plaintiff has sustained damages to his person, physical, mental and emotional distress, community humiliation and loss of reputation, for all of which he seeks compensatory damages in amounts deemed just by the Court.

74.    That because the acts of the defendants herein alleged were carried out maliciously or with reckless disregard for the plaintiff's clearly established fundamental rights, the plaintiff seeks an award of punitive damages against them, to deter them, and others similarly situated, from similar wrongful acts in the future.

# COUNT V

## False Imprisonment Against Defendants LaFAVOR, BAUER, KOBER, WAGNER, ANGLE and other unidentified Waukesha City Police Department officials

75.    For a cause of action against defendants LaFavor, Bauer, Kober, Wagner, Angle and/other unidentified Waukesha City Police Department officials plaintiff alleges each of the preceding paragraphs as though set forth fully herein.

76.    That LaFavor, Bauer, Kober, Wagner, Angle and/or other unidentified Waukesha City Police Department officials did, through the use physical force against the plaintiff in executing his arrest on June 19, 2010, and in continuing to detain the plaintiff in the custody of the defendants thereafter, unlawfully confine and restrain the plaintiff's liberty and/ or deprive the plaintiff of freedom of movement against his will.

77.    That the above described actions were carried out intentionally, in bad faith, without legal excuse, without just cause, and without authority to do so.

78.    That by virtue of the defendants' unlawful actions against the plaintiff, the plaintiff has sustained damages to his person, physical, mental and emotional distress, community humiliation and loss of reputation, for all of which he seeks compensatory damages in amounts deemed just by the Court.

79.    That because the acts of the defendants herein alleged were carried out maliciously or with reckless disregard for the plaintiff's clearly established fundamental rights, the plaintiff seeks an award of punitive damages against them, to deter them, and others similarly situated, from similar wrongful acts in the future.

## COUNT VI

**Abuse of Process Against Defendants LaFAVOR, BAUER, KOBER, WAGNER, ANGLE and other unidentified Waukesha City Police Department officials**

80.    For a cause of action against defendants LaFavor, Bauer, Kober, Wagner, Angle and/or other unidentified Waukesha City Police Department officials plaintiff alleges each of the preceding paragraphs as though set forth fully herein.

81.    That LaFavor, Bauer, Kober, Wagner, Angle and/or other unidentified Waukesha City Police Department officials did intentionally, willfully, and improperly cause a criminal proceeding to be instituted against the plaintiff by referring the plaintiff for criminal charges to the Waukesha County District Attorney on the basis of false allegations and by their intentionally omission of crucial and exculpatory evidence from the prosecuting entity.

82.    That all of the above described actions were carried out with a purpose other than that which the criminal process was designed to accomplish, with the deliberate purpose of deterring and/or obstructing the plaintiff from filing a civil action against the above named defendants to redress the ongoing multiple violations of his civil rights, and with the intent to conceal the actions described in this complaint.

83.    That by virtue of the defendants' unlawful actions against the plaintiff, the plaintiff has sustained damages to his person, physical, mental and emotional distress, community humiliation and loss of reputation, for all of which he seeks compensatory damages in amounts deemed just by the Court.

84.    That because the acts of the defendants herein alleged were carried out maliciously or with reckless disregard for the plaintiff's clearly established fundamental

rights, the plaintiff seeks an award of punitive damages against them, to deter them, and others similarly situated, from similar wrongful acts in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, the plaintiff, Mark S. Schroeder, prays that this Court grant judgment against the defendants, awarding the plaintiff, Mark S. Schroeder:

A.  Monetary damages in an amount which will compensate him for his losses, including pain and suffering and humiliation;

B.  Punitive damages against the individual defendants and the City of Waukesha in a monetary amount which will serve as a deterrent to the defendants from repeating such behavior in the future.

C.  The plaintiff's costs, actual attorney's fees and litigation expenses as well as any further relief this Court deems just pursuant to 42. U.S.C. § 1988.

## DEMAND FOR JURY TRIAL

The plaintiff demands that the issues in the above captioned matter be tried by a jury of twelve persons.

**DATED:**  October 15, 2013.

SCHMIDT, DARLING & ERWIN
Attorneys for Plaintiff Mark S. Schroeder

By: /s/ Eric S. Darling
          Eric S. Darling
          State Bar No. 1016775
          Benjamin E. Reyes
          State Bar No. 1084777

***Post Office Address:***
2300 North Mayfair Road
Suite 1175
Milwaukee, WI 53226
(414) 258-4300
esd@sdelaw.com
ber@sdelaw.com

**MASTANTUONO LAW OFFICE, S.C.**
Attorneys for Plaintiff Mark S. Schroeder


By: /s/ Craig Mastantuono
        Craig Mastantuono
        State Bar No. 1020125

*Post Office Address:*
Mastantuono Law Office, S.C.
817 North Marshall Street
Milwaukee, WI 53202
**P** (414) 276-8662
**F** (414) 276-8661
**E** cmast@mastantuono-law.com

26